UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DEMETRIUS COOPER,

        Plaintiff,

        v.                                      Case No. 25-cv-0983-bbc

TONYA WESNER et al.,

        Defendants.

---

## DECISION AND ORDER

---

      Plaintiff Demetrius Cooper, an inmate at Waupun Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. On July 7, 2025, Defendants Jesse Hosfelt, Haley Bassuener, Tonya Wesner, Jesse Laning, and Gwendolyn Vick moved for summary judgment on exhaustion grounds. Dkt. No. 86. That same day, Defendant Zafar Nabeel Syed also moved for summary judgment on exhaustion grounds. Dkt. No. 88. On August 18, 2025, Dr. Syed filed a reply brief in which he conceded that his motion should be denied because Cooper had shown that the administrative remedies were unavailable to him. The Court will therefore deny Dr. Syed's motion and for the reasons explained below, will grant Wesner, Bassuener, Hosfelt, Laning, and Vick's motion.

## BACKGROUND

      On September 26, 2023, Cooper had surgery at Waupun Memorial Hospital to remove his gallbladder. According to Cooper, from September 26, 2023, through October 16, 2023, Wesner, Bassuener, Hosfelt, Laning, and Vick, all of whom worked as medical staff at the institution, "continually" denied him medical treatment until he was rushed to the hospital on October 16,

2023, for emergency surgery. Cooper was treated at different hospitals until October 27, 2023, at which time he was discharged back to the institution. Dkt. No. 86 at 2; Dkt. No. 113 at 2.

Defendants assert that Cooper failed to exhaust the administrative remedies for his claims against Wesner, Bassuener, Hosfelt, Laning, and Vick. They state that Cooper did not submit any inmate complaints alerting prison officials to his concerns about the medical treatment he was (or was not) receiving. The only arguably relevant inmate complaint—WCI-2023-16225—was rejected as untimely. That inmate complaint, which was filed on October 27, 2023, the day Cooper returned from the hospital, identifies the one issue of the inmate complaint as: "HSU staff John or Jane Doe violated my 8th Amendment by not scheduling a follow-up appointment after surgery." The inmate complaint further states that, after having gallbladder surgery on September 27, 2023, Cooper should have had a follow-up appointment, but someone failed to schedule the appointment, which "resulted in a near death experience." Dkt. No. 86 at 9-10; Dkt. No. 87-3 at 8.

Cooper disputes that he failed to exhaust the administrative remedies, arguing that they were unavailable to him for several reasons. Dkt. No. 98 at 4. First, according to Cooper, Warden Randall Hepp suspended all "administrative rules," which Cooper asserts "opened up the floodgates into the federal courts." As proof of this alleged suspension, Cooper offers two letters from the Education Director explaining that, because Waupun Correctional had been operating under a suspension of administrative rules since March 19, 2020, the prison remained under modified movement with limited access to services, including the law library. The letter makes no reference to the suspension of the inmate complaint review system which is described in Wis. Admin. Code § DOC 310. Dkt. No. 98-1 at 1-2. Cooper also offers a November 14, 2023, memo from Warden Hepp in which the Warden confirms that the "administrative rules of the Department have been suspended" and in which he authorized the suspension of rules regarding visits, showers, and leisure time activities. Dkt. No. 98-1 at 3. This memo also makes no reference to the suspension of the inmate complaint review system.

2

Cooper next argues, in contradiction of his assertion that the inmate complaint review system had been suspended, that institution complaint examiners were allowed to accept, reject, or deny inmate complaints at their discretion. Dkt. No. 99 at 2. He offers no evidence to support his assertion that inmate complaint examiners were allowed to disregard the requirements set forth in § DOC 310. Cooper highlights that he submitted "at least 30 inmate complaints about each defendant related to the claims in this lawsuit and the inmate complaint department ignored nearly all of them . . . ." Dkt. No. 99 at 2. However, Cooper does not provide copies of the inmate complaints that he allegedly submitted, nor does he state when he submitted them, what he stated in each inmate complaint, or what he did in response to the institution complaint examiner's inaction. As explained above, the only arguably relevant inmate complaint that has been offered into evidence concerns Cooper's discrete complaint that no follow-up appointment was scheduled after Cooper's gallbladder surgery. Dkt. No. 87-3 at 8. Finally, Cooper states that he wrote to the security director for help. *Id.* But the letters Cooper wrote to the security director raise concerns only about his medical care; the letters do not reference any concerns about the inmate complaint review system. Dkt. No. 98-1 at 4-5.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932,

3

937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Under the Prison Litigation Reform Act, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Wisconsin has established the inmate complaint review system to review inmate grievances regarding policies, rules, living conditions, or employee actions that personally affect the inmate or institution environment. Wis. Admin. Code § DOC 310.06(1). In Wisconsin, an inmate is required to file an inmate complaint "within 14 days after the occurrence giving rise to the complaint." *Id.* § DOC 310.07(2). Each inmate complaint must contain only one clearly identified issue. *Id.* at § DOC 310.07(5). Federal courts "take[ ] a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Defendants Wesner, Bassuener, Hosfelt, Laning, and Vick's motion for summary judgment on exhaustion grounds must be granted because Cooper has failed to adequately dispute their assertion that he did not submit an inmate complaint about the claims against them. First, Cooper has not created a triable issue on whether the administrative remedies were unavailable to him. Cooper relies on two letters from the Education Director and one memo from the Warden to support his assertion that, along with the "administrative rules," the inmate complaint review system had been suspended. But neither letter references the inmate complaint review system, and

4

the fact that Cooper himself repeatedly took advantage of the inmate complaint review system undercuts his unsupported assertion that it had been suspended.

Nor has Cooper supported his assertion that he submitted at least thirty inmate complaints about the claims in this case. As noted, Cooper did not file copies of these "ignored" inmate complaints, nor does he provide any details about the inmate complaints such as when he filed them or what they stated or what he did after he received no response. Cooper requests that the Court schedule an evidentiary hearing so he can present more evidence on this point, but, as the Seventh Circuit has said many times, summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (citations omitted). Cooper bears the consequence of failing to provide evidence to support his assertions.

Further, Wis. Admin. Code § DOC 310.10(4) requires inmate complaint examiners to "give written notice to the inmate within 10 days of collection that the complaint has been received." As such, Cooper should have taken the absence of written notice in response to allegedly *dozens* of inmate complaints "as a red flag" and "he should have undertaken, through the complaint procedure, an inquiry to ascertain why he had not received [these] important document[s]." *Lockett v. Bonson*, 937 F.3d 1016, 1027 (7th Cir. 2019). As the Seventh Circuit explained in similar circumstances, "[h]aving failed to make that inquiry, he may not now counter evidence that the prison did not receive [or process] his [inmate complaint] with a bald assertion of timely filing." *Id.*

That leaves the issue of the rejected inmate complaint that Cooper filed on October 27, 2023. Even assuming the inmate complaint examiner had processed this submission, it would not

5

have exhausted the administrative remedies for Cooper's claims against Wesner, Bassuener, Hosfelt, Laning, or Vick. Cooper is proceeding on claims against the Defendants based on allegations that, for weeks, they ignored his symptoms, complaints of pain, and requests to see a doctor. The October 27 inmate complaint addresses a much more discrete issue: The alleged failure to schedule a follow-up appointment after his gallbladder surgery. Even construing the inmate complaint broadly, it does not suggest that Cooper's complaints, symptoms, and requests to see a doctor were repeatedly ignored by medical staff.

Although the applicable Wisconsin regulations do not require that an inmate complaint identify the perpetrator of an alleged problem or identify the potential legal claim that may later be pursued, *see Henry v. Deshler*, No. 20-2185, 2021 WL 2838400, at *2 (7th Cir. July 8, 2021), the inmate complaint must "provide notice to the prison of the nature of the wrong for which redress is sought," *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020). The nature of the wrong identified by Cooper in this inmate complaint is that someone forgot to schedule a routine follow-up appointment after his surgery. This discrete issue would not have provided notice to the prison of his concerns that medical staff were ignoring or dismissing his increasingly desperate pleas for medical treatment. Accordingly, even if the institution complaint examiner had processed the only arguably relevant inmate complaint that Cooper filed, it would not have been sufficient to exhaust the administrative remedies for his claims against Wesner, Bassuener, Hosfelt, Laning, or Vick. These Defendants are therefore entitled to summary judgment on Cooper's federal claim.

Further, because the proof necessary for Cooper's state law claims against these Defendants will not overlap with the proof necessary for his claims against the remaining Defendants, the Court will relinquish supplemental jurisdiction over the state law claims against Wesner, Bassuener, Hosfelt, Laning, and Vick. *See Hernandez v. Dart*, 635 F. Supp. 2d 798, 814

(N.D. Ill. 2009) (explaining that supplemental jurisdiction is not appropriate merely because the claims are "tangentially related" or share a broad factual background); *Birdo v. Mathis*, Case No. 15-cv-456, 2015 WL 3948150, at *3 (S.D. Ill. June 26, 2015) ( noting that "the question is whether the proof necessary for the state claim overlaps with the proof necessary for the federal claim"); *see also* 28 U.S.C. §1367(c)(3) (a district court may relinquish its jurisdiction over state law claims after the federal claims are resolved). Cooper may pursue medical malpractice claims against these Defendants in state court, if he so chooses. The Court offers no opinion on the merit of those claims.

## OTHER MOTIONS

On July 21, 2025, Cooper filed a motion to compel, asking the Court to order Shelli Bauersfeld to more fully respond to his discovery requests. Dkt. No. 101. Cooper does not identify specific interrogatories or document requests that he believes are incomplete; instead, he vaguely characterizes all of her responses as boilerplate and insufficient. About a week after he filed his motion, he filed an "addendum," asserting that Bauersfeld's lawyer has "doubled down" on his refusal to fully respond to the discovery requests. He also asserts that Bauersfeld's lawyer is improperly demanding that Cooper pay for copies of his health records.

The Court will deny the motion to compel without prejudice because it does not appear that Cooper attempted to resolve his concerns with Bauersfeld's lawyer before he filed his motion, which is required by Civil L. R. 37. Further, Cooper's motion is far too vague, making it impossible for the Court to assess whether Bauersfeld's objections were "boilerplate" as he characterizes or whether they were "good-faith objections where appropriate, including to requests that were vague, overly broad, or called for a medical opinion," as Bauersfeld characterizes. The Court encourages Cooper to confer with Bauersfeld's lawyer about specific concerns he has with her responses and to make an effort to revise his requests to account for appropriate objections
7

regarding vague or overly broad requests. Bauersfeld cannot provide information she does not have, and Cooper's desire for a "better" answer will not change that. Similarly, the Court encourages Bauersfeld's lawyer to keep Cooper's pro se status in mind and to provide Cooper with the information he rightfully seeks (subject to appropriate objections), even if the request is not perfectly stated. The Court is confident that the parties can navigate discovery without its help if they interact with each other in good faith.

The Court will also not sanction Bauersfeld because her lawyer requested that Cooper pay for copies of the records she has in her possession. *See* Dkt. No. 102. It is not Bauersfeld's responsibility to subsidize Cooper's litigation. If he wants copies of records she possesses, he can pay the copying costs, just as she was required to pay the copying costs when she obtained them from the Department of Corrections. While Cooper may be entitled to access certain documents, that does not mean he is relieved of the financial burden associated with facilitating that access. After all, Cooper, not the Defendants, is the one who chose to bring this action. If Cooper does not want (or cannot) pay for copies of his medical records, then he can view them for free at the health services unit.

Finally, on July 29, 2025, Cooper filed a motion to appoint counsel, which the Court will deny without prejudice. Cooper asserts that he has contacted more than a hundred lawyers, but no one has agreed to take his case. He also explains that he has little education, trouble staying focused, and suffers from numerous mental health problems.

In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these

8

cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)). Accordingly, in exercising its discretion, the Court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)).

Cooper appears to have satisfied the first prong of the standard. Nevertheless, the Court will deny his motion because he appears capable of representing himself through at least discovery and likely through the briefing of summary judgment. When considering whether a plaintiff has the capacity to represent himself, the Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Pennewell v. Parish*, 923 F.3d 486, 491 (7th Cir. 2019).

Cooper has vigorously advocated for himself, filing numerous motions and thoroughly responding to Defendants' motions. His writing is clear, straightforward, and well organized. He is able to make logical arguments and frequently cites to relevant case law and information obtained in discovery. Indeed, his ability to represent himself far exceeds that of the typical incarcerated individual, nearly all of whom have limited education and mental health challenges. Nothing in the record suggests that Cooper lacks the capacity to participate in discovery, so the Court will deny his motion at this time. To the extent Cooper requires additional time to comply with a deadline because of limited access to the law library or difficulty concentrating for long periods of time, he may file a motion asking for an extension of the deadline. The Court will not needlessly delay resolution of this case, but it will extend deadlines upon a showing of good cause.

9

If new challenges arise that Cooper thinks he cannot handle on his own, he may renew his motion to appoint counsel. If he does so, he should be specific about the challenges he faces and explain what efforts he has made to overcome those challenges.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the State Defendants' motion for partial summary judgment on exhaustion grounds (Dkt. No. 85) is **GRANTED**, and Cooper's motions for a *Pavey* hearing and for a writ of habeas corpus for testimony at a *Pavey* hearing (Dkt. Nos. 113, 120) are **DENIED as moot**. Cooper's claims against Wesner, Bassuener, Hosfelt, Laning, or Vick are **DISMISSED without prejudice**. Cooper may pursue his state law claims against these individuals in state court, if he so chooses. The clerk's office is directed to terminate Wesner, Bassuener, Hosfelt, Laning, or Vick from this action.

**IT IS FURTHER ORDERED** that Dr. Syed's motion for summary judgment on exhaustion grounds (Dkt. No. 88) is **DENIED**.

**IT IS FURTHER ORDERED** that Cooper's motion to compel (Dkt. No. 101) and his motion for payment of $1,000 (Dkt. No. 102) are **DENIED**.

**IT IS FURTHER ORDERED** that Cooper's motion to appoint counsel (Dkt. No. 106) is **DENIED without prejudice**.

Dated at Green Bay, Wisconsin on August 25, 2025.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge